United States Court of Appeals for the Fourth Circuit. Oh, yay. Oh, yay. Oh, yay. All present have in a manner form a business for the Honorable the United States Court of Appeals for the Fourth Circuit. A monster draw not get their attention, but the court is now sitting. God save the United States and his Honorable Court. All right. Good morning, everybody. Please be seated. Welcome to the Fourth Circuit. We have four cases on the calendar this morning. And before we begin, I want to welcome the Honorable Robert Ballew from the Our first case this morning is 21 4312 and 21 4327 United States v. Roy. Mr. Rallo, are you ready? I am, Your Honor. Sorry about that. Well, it wasn't my fault, but I'll apologize anyway for the car troubles you had yesterday. Thank you, Your Honor. You may be seated whenever you're Thank you, sir. May it please the court again. My name is Ed Rollo, and I represent the appellant Joshua Aaron Roy. It is indeed a pleasure to be before this court, and I wish I was there in person. The issue in this case is whether the district court procedurally erred in relying on two facts that were either clearly erroneous or outside the record at sentencing, namely, number one, that Mr. Roy possessed a firearm in connection with the drug possession offense, and number two, whether fentanyl is so potent that it can cause one who simply touches to overdose. The court relied at sentencing on both of those facts, which we consider to be outside of the record and perhaps clearly erroneous. By way of background, Mr. Roy was indicted in two separate cases. For appeal purposes, they have been consolidated. For sentencing purposes, they were consolidated. The underlying offenses to which Mr. Roy pleaded were separated by approximately 10 days. In the first case, Mr. Roy pled guilty to possession with intent to distribute at least 40 grams of fentanyl, aiding and abetting, and in this particular case, Mr. Roy was not charged with any possession of firearms. In the second case, Mr. Roy pleaded guilty to count one, charging Mr. Roy with unlawful possession of a firearm, and in this particular case, Mr. Roy possessed only one firearm, but there were no drugs found. Now, district trial judges are given a certain amount of latitude in the comments that they make prior to sentencing, and in this case, the judge represents the public interest in his comments, and it's perfectly legitimate to allude to the public interest, and I don't understand what was so wrong about pointing to the dangers of fentanyl. One thing, I'm not sure that the judge was off base at all in the interest of caution. I wouldn't be touching fentanyl. I hope you wouldn't be touching fentanyl, and the reason neither you or I would be touching fentanyl is that we'd be running a real risk. Your Honor, if I may, I understand the comments. Thank you. In my brief, I did cite a number of federal court cases, even state court cases, where the courts came to that scene. All the judge is saying is that fentanyl is dangerous stuff, and that's just a colloquial way of saying whether it's actually lethal to the touch or not, might be a matter of dispute. Certainly, the DEA and the CDC had published warnings at that time on their websites that fentanyl can be absorbed through skin contact, but even if arguendo, this wasn't factually correct, and I'm not sure at all it wasn't factually correct. I think there's a lot of factual support for it, but the judge is saying what he's trying to communicate is that fentanyl is dangerous, and it's particularly dangerous in the Ohio River Valley in the northern district of West Virginia. That community has been laid waste by fentanyl, and it has short young lives long before their time. The defendant's own daughter, as I understand it, had lost her life to this, and so the judge is taking cognizance of that and saying this is dangerous stuff, and I'm going to take that into account. I don't understand how that could be reversible error. If I may respond, without question, communities have suffered adverse effects from all controlled substances, including fentanyl. No one disputes that. The issue in this case is what the court relied upon was the toxicity of fentanyl, not by way of ingestion, but by way of touch. The guidelines take into consideration the specific amount of fentanyl that was attributed to Mr. Roy. The court decided to insert the court's own public policy, even though the guidelines contemplated by way of its public policy was not suggesting that the amount of fentanyl was the reason for the variance, but a fact that was outside of the evidence, which was the toxicity of the fentanyl. If I could, you're right, there are certainly courts that have found it to be toxic, and you had mentioned two other governmental sources that also found it to be toxic to the touch. The Ohio State University disagrees, and their medical center said, and I cited this in my brief, do you want to withdraw your plea? Mr. Roy does not wish to withdraw his plea, your honor. I'm sorry, I didn't hear. Mr. Roy does not wish to withdraw his plea. If he doesn't withdraw his plea, where are you going? Where are you going with this? Mr. Roy is seeking that this court would remand his case for resentencing with facts that are in the record and not outside of the record, and facts that are not clearly erroneous. You really think this is going to make a difference? The federal rules make perfectly clear, rule 11 makes perfectly clear that harmless areas should be disregarded unless substantial rights are affected, but if this goes back to the district judge, he's going to say, all right, whether it's toxic or not to the touch, it's very dangerous stuff, and it's devastating our community, and you should steer clear of it. This person was involved with it, but to hold this to be reversible error, gosh. Your honor, I don't see where it's going. I don't see where it's going. If I could just briefly finish my thought here for a moment, so in addition to the high state university, and I'll address your comment one second more specifically, in addition to high state university, the American college of medical technology also said that fentanyl and its analogs are potent opioid receptor agonists, but the risk of clinically significant exposure to emergency responders is extremely low, and the reason I bring that up is to show that the fact upon which the court relied specifically with respect to the toxicity of fentanyl, it's not one which the court could take judicial notice of. You make a good point, but didn't the district court qualify the statement that he made about the toxicity of the fentanyl in this case by indicating that his experience with this was entirely anecdotal, and so in the end, that really although it was an important, it wasn't insignificant, but he didn't establish that as fact. He was relating a personal conversation that he had overheard with someone in a courtroom, but qualified it as being entirely anecdotal, but I don't think I hear you saying that the court was wrong to believe that this particular drug is lethal and dangerous perhaps than some others, but that wasn't all that the district court relied on. In addition to that, he looked individually at this defendant, his extensive criminal history, and the nature of the offenses, and considering all of that, decided that a guideline sentence wasn't appropriate and that varying upward was more appropriate, and I guess that gets back to Judge Wilkinson's point is if we do send this back, it isn't very likely I don't think that the district court is going to change its mind, and I think it can easily justify and well you could tell me why it wouldn't be able to justify an upward variant sentence even without this issue about the you know the the toxicity of the fentanyl. Your honor, in that case if it were remanded and there were there was insufficient evidence presented at sentencing with respect to the toxicity of fentanyl we would hopefully prevail on the argument that the amount of fentanyl, so you're right your honor, I think the court did say that it was disturbed by the amount of fentanyl as well as the toxicity of fentanyl, and of course there was an issue with firearms being involved. When we get to resentencing, if that is in fact the case, I would hope that our most persuasive argument that would to use a term baked in the cake and that an upward variance based upon the amount of fentanyl would be improper because the amount of fentanyl is what drove the guideline calculation. Let me ask you generally about a point because this part of my concern about this case is that it goes to the relationship between the district court and the court of appeals, and we have encouraged district courts to explain their sentences. Don't just slap down a sentence, but explain it, and here the district court gives an explanation. He's saying this is what I'm doing, this is why I'm doing it. Now I'm wondering don't we meet trial courts going and coming when we say give an extensive, give an explanation of what we're doing, and then when they do give an explanation we pick it apart with saying oh you made an arguably incorrect statement. Even when it doesn't, as my friend Judge Diaz points out, even if it's a small part of the overall proceeding and the more salient parts are of the criminal history category and other such things, but I'm worried about saying to district courts give us a good explanation and then when they do start to nitpick it and pick it apart on every little small matter. So what's a trial court to do? Your honor, that's an excellent point to which I have no very good response. Mr. Rolo, let me ask you a question. You talk about the the guidelines having baked in the cake, if you will, the the amount of fentanyl, but didn't the district court have a policy disagreement with the guidelines? He announced up front that he thought that the guidelines were understated, and isn't that within his prerogative? I believe it is, your honor. However, our our position is that the toxicity of the fentanyl, being a fact that was outside of the record, did inform the court in large part as to his disagreement with the guidelines. When we talk about toxicity, we use that term generally, but more specifically, was it inappropriate from from your perspective for him to talk about how lethal fentanyl is when taken, when ingested, and how quickly it can kill, and the devastating effects that it has on the community? It wasn't inappropriate for him to do that? Go ahead, I'm sorry. I'm sorry, your honor. No, I believe that was not inappropriate at all. I know that I'm running out of time. If I could just have about 30 more seconds, and then I'll take that off my rebuttal. Go ahead. Uh, you know, with respect to toxicity, I've read a lot of four circuit decisions concerning fact patterns where controlled substances are purchased, including fentanyl. I've been involved in a lot of cases where we have controlled buys, and I'm sure you've seen a lot of cases where there's controlled buys. In in none of those controlled buys have I ever seen a situation where a government agent or a task force tells the CI, we're going to send you in there, buy the fentanyl, just don't touch it. So it appears, you know, we can record decisions that say fentanyl is toxic to the touch, and that's exactly what the district court relied upon. I would argue, in large part, we can have expert reports, but in the real life world of controlled buys, fentanyl is not toxic to the touch. And if it were toxic to the touch, we would have maybe here or there a controlled buy where the confidential informant is told, don't touch the fentanyl. We want you to go in there and buy it, but don't touch it. So out in the real world, yes, I'm not downplaying how serious the problem is. I'm simply focusing on whether it's toxic to the touch as relied upon by the district court. In the real world, no one believes it's toxic to the touch. If the task force agents and the government agents believed that it was, then there would be admonishments before every controlled buy. And I've seen perhaps hundreds of controlled buys in my 30 years and have not once seen that admonishment. With that, I'll yield. Thank you. Thank you, Mr. Rallo. Mr. Warner. Good morning, your honors. My name is Steven Warner. I'm an AUSA in the Northern District of West Virginia at Elkins. May it please the court. We ask that the court affirm the sentence because the district court did not err at all. It did not err in commenting that it had once heard that fentanyl is so potent that merely touching it could cause an overdose. And the court did not err in including its fact that the gun Mr. Roy had 10 days after the police took 1,000 fentanyl doses from him was relevant to the fentanyl case. Your honors, I tore this transcript apart and made bulleted lists that I think is persuasive to go through. But in a nutshell, if I could tell you, I found there are six times in this record, five in the sentencing hearing and once in the statement of reasons, when the district court tees up and says, in spite of comments and conversation, the court tees up six times and says, these are the reasons for the upward variance. Or these are the reasons for the upward variance in the sentence. Never once in any of the six times does the district court say a reason is because it's so potent, merely touching it causes you to is because fentanyl is uniquely deadly. But Mr. Roy, in page 31 of the transcript, and also earlier, affirmatively tells the court that he agrees with that. I think the words are on page 31, Mr. Roy wants you to know his daughter died from fentanyl. And nobody knows better than him the dangers of fentanyl. And that's after the court has given talk about a trial where he was told not to touch the fentanyl. So my point is, it's not just that Mr. Roy didn't object. He affirmatively agreed with the fact that fentanyl is uniquely deadly. And that's the fact that the court relied on all six times in increasing the sentence. So there was no error in that at all. As for the gun, I was there, Ed and I were there together. But as I read the transcript, I see it now again. The court did find that the gun was relevant to the drug offense. And it's part of the sentence, a reason for the sentence. But the word firearm doesn't even appear in the transcript until late in the sentencing hearing. I mean, it appears in the introductory comments, right? The court says you've been convicted of a unlawful possession of a firearm. But after that, the word firearm has nothing to do with the conversation in the sentence. In fact, I think there were three times before then when the district court said I'm going to vary upward because of the quantity of the dangerous substance in your criminal history. But the word sentencing hearing when Mr. Roy is already allocated, we've moved on. Mr. Roy interrupts the court and says, may I say something, Your Honor? And he then tells for the second time a story that he's a mere addict. He wants the court really to feel sorry for him. If you read the story that he gave, he says something like, we've all had a heck of a year, Your Honor, in explaining his behavior. But he definitely says that fentanyl was the demon. He was a mere addict. I was only along for the ride to protect my daughter and to get high. That's the quote. The court then rebuffs that and says, you will never convince me, Mr. Roy, that you're a mere addict. You will never convince me. That's the first time firearm even comes into the sentencing hearing in response to Roy downplaying his role of the elements of the offense, really. You will never convince me. And really, in words that mirror your opinion in the Mitchell case, maybe two months ago, it came from this court. I don't have the citation, but U.S. v. Mitchell. Mitchell was a North Carolina truck driver who had three grams of meth in a gun. And this honorable court found that you can't just assume there's a relationship between possession and a gun. But the line of cases are for, if it's distribution and a gun, yes, you can, but not for mere possession. But the district court nearly mirrors some of the language from that opinion when it says, Mr. Roy, you will never convince me that you were a mere drug addict because drug addicts don't possess firearms. That's when the This was a business. And I would argue that there are plain and common sense reasons why the court would have that inference that the gun that Mr. Roy had on the 30th of January was relevant to the police taking a thousand doses of fentanyl from him that he was on his way trafficking back from Baltimore 10 days earlier. It necessarily follows that he owed a drug debt to people or person or persons in the community. So it's no surprise at all that a mere 10 days later, he has a gun. It's also no surprise that it's not common sense for a person who would be a drug dealer on the 20th of January to not be a drug dealer on the 30th. That's not the way it works. Drug dealing is a rotating, ongoing lifestyle. And even I would go so far, the fact I would say it's clear and obvious that he necessarily owes a drug debt for the thousand fentanyl doses that have been taken from him. And there he is 10 days later. Is that his record that he owes a drug debt? No, that's my argument as to one of the reasons that are not in the record, but why it's, I would say, clear and obvious common sense reason why the court would assume the gun 10 days later is relevant to the drug offense. Can I ask, Mr. Rallo's argument, one of his arguments is that, look, this is not good behavior, but all of it is sufficiently accounted for in the guidelines by the Sentencing Commission, the nature of the drug, his prior criminal history, et cetera. And the district court didn't really point to anything that makes this the kind of extraordinary case that would warrant a variant sentence. Now, Judge Ballou makes a good point that a district court is entitled to disagree with the policy statements of the commission with respect to the dangerousness of a particular drug or any policy statement, I imagine. So what is it about this case that warranted the district court's decision to upwardly variant, given that all of the factors that he relied on were presumably accounted for in the guideline sentence to begin with? The district court said in the transcript, it believes this is the most fentanyl it has ever found. And I think if you look kind of historically at the district court, quite frankly, Honorable Judge Cleese went on the bench about half a dozen years and didn't practice criminal law before. So we're seeing in his courtroom before his eyes in the last few years, people dying from fentanyl and fentanyl cases. Even in this particular case, his stepdaughter died from fentanyl. So I think it probably was building up that fentanyl is not a normal drug like the other drugs. There are too many dead people appearing in his courtroom. So I think that's the reason that he's very upset with the guideline range for fentanyl because of what he's seen in his courtroom. I have to identify some error that would be a basis for remand. And one of the things that was interesting to me was that as far as I can tell, the guilty plea was procedurally sound because there was no question but that the guilty plea was knowing and voluntary. And there was clearly a factual basis for the plea. And so all of those things that we look, the guidelines are advisory, of course, but they're still important. But all of those things that we look at in trying to discern the soundness of a guilty plea, the knowing and intelligent, voluntary nature of it, question of whether there's a factual basis, all those were in place, were they not? Absolutely, Your Honor. I see no, and there's no error raised, any problem with the guilty plea in any of the proceedings. I agree with you. That's correct. And he went through the Rule 11 catechism, didn't he? Extensively in our district. It's an hour-long hearing going through the Rule 11 procedure. There'd be no question. I didn't study it for preparation for today, but there's no question the guilty plea is sound. And so what the focus is, is whether we can take or he can take judicial notice of the fact that fentanyl to the touch can cause overdoses. And some of the public resources that you rely upon talk about fentanyl and it's in certain forms can cause overdose-type symptoms. What are those forms? Are they powder? Are they pills? Do they reflect what was found here? And is it accurate to be able to have the same effect in this particular case? I did read that and I'm aware of that, and I did say some of that in my brief as well. But as I prepared for this hearing, Your Honor, the district court, out of six times, never said that's a reason for the sentence. Never said that's a reason for the upper variance. It was right at the end when he was going through the six pieces. He said, and fentanyl, it is so deadly that it can cause overdose to the touch. I think when I looked at this transcript, and I know you'll tear this apart too. I think that there was a conversation about that toward the end, but he definitely says that somewhere toward the end of the hearing. But then he actually tees up and says, Mr. Roy, please stand. I'm going to give you the reason. And the reasons for the sentence is not that. Although I know that sentence comes out toward the end of the hearing. But if you take it in context with the story that the court said was anecdotal, and that's the only other time it's raised. But when the district court six times says, these are the reasons, the court never said the touching issue was a reason for the sentence or the upper variance. And the court definitely does say that fentanyl is uniquely deadly. But Mr. Roy has agreed to that, and he agreed to that during the hearing, that fentanyl is uniquely deadly. So there's definitely a difference between whether fentanyl is uniquely deadly, whether it's so deadly that you can touch it and overdose. And the court separated that. It discussed the anecdotal story, and it did make the sentence late in the case. But when it teed up and said, these are the reasons, it never said one reason for the sentence is because it's so potent, if you merely touch it, you'll overdose. Well, I mean, there's still a case where a district court judge spends so much time focusing on something which is either irrelevant or completely prejudicial during the colloquy between lawyers and the defendant. And then at the end, in stating his or her reason says nothing about it, that we still might infer that that was just too much, that the court spent too much time on an issue which really shouldn't have been part of the calculus. But your point is that that was at best a fleeting reference and wasn't the focus at all of the hearing. And when it came time to explain the sentence, that the district court should be and didn't rely on this issue that there might be some concern about. Exactly, your honor. I appreciate the way that you said that. That is my point. Yes, sir. Do you have anything else? I have nothing else. Thank you. Thank you, sir. Mr. Rallo, you've got some rebuttal time. Your honor, I hate to waste an opportunity to have the last word. However, I would simply be to address any questions. I'll ask one question. It's a follow-up as to what Judge Diaz had with respect to Mr. Warner, and that is the toxicity of fentanyl to the touch is mentioned twice in the sentencing transcript. And is it so pervasive through the sentencing transcript that it overshadows the last list of the reasons given, or is it merely one of the things that is talked about as part of the overall discussion? Your honor, could you give me one second, please? And the references are the first is to the anecdotal story and the second is right before he gives the last set of reasons. My experience with this court is that it routinely accepts guideline calculations with respect to offense levels based upon the weight of drugs. And Mr. Warner can weigh in if he differs, but I don't believe he would. I think the court has that track record. In other words, when the guidelines or the calculations are based upon the weight of the drugs, I think the court has a clear history of accepting those calculations. In this case, the court opted to vary up in large part based upon what we believe to be court's finding that fentanyl was toxic to the touch. And we believe that was clearly erroneous for no other reason than because we all know from cases that we've been in and have observed, government task force agents don't admonish the thousands of CIs that it works with not touch the fentanyl. Because if it was toxic to the touch, they would. And because of the court's finding, not just something that was clearly erroneous, but outside of the record. You know, counsel, it's not as if this statement was something that was often never, never land, isn't it? There was a scientific dispute, but you have some agencies, the DEA and CDC saying that this could be absorbed through skin contact. It's not as if this statement was some wild statement that was off the charts. It was grounded in professional recommendations. But the other thing is that it goes back and district court scratches his head and says, all I was trying to say was that the fentanyl is a very dangerous substance. And there's no dispute that it's a dangerous substance, your honor. In fact, it wasn't a wild statement at all to come to that conclusion. And being candid with the court in my brief, I gave this court a bunch of cases where other courts had found that fentanyl was extremely dangerous. I also provided, as I mentioned before, authorities that said it's not dangerous to the touch. The point that I think needs to be made is that none of that was evidence before the court. And the court was not able to take judicial notice of the toxicity of fentanyl, which I contend is in dispute for a number of reasons previously stated. So if it's in dispute and the court can't take judicial notice of the toxicity, then it's an extra judicial piece of evidence that was not in the record, that was outside of the record. And that's our dispute with the courts. Thank you, Mr. Rallo. Mr. Rallo, I note that you're court appointed. I want to thank you on behalf of the court for taking on this assignment. If you were here, we'd come down and greet you personally, but you're not, so we're not going to be able to do that. But we are going to come down and do an ex parte handshake with Mr. Warner if that's okay. Don't be too nice to him.
judges: Albert Diaz, J. Harvie Wilkinson III, Robert S. Ballou